(Superior Court of Cincinnati—General Term. April, 1897.)

## IKE SACHS v. THE DUCKWORTH BUILDING & LOAN ASSOCIATION.

*Payments to a building association by share-holders—Burden of proof.*

The constitution of a building association provided that: "All money must be collected and paid out in legal money. It is the duty of every member to hand to the Board of Directors the exact amount in their receipt book. The company is not responsible for any money paid to an officer of the company except paid during the regular office hours and to the authorized officers of the company." And further provided that: "All the money which is paid to the company must be received by the Board of Directors in the presence of the first secretary, and the directors shall be responsible for the exactness of the same, and shall deliver it immediately to the treasurer."

The association having gone into the hands of a receiver, it was discovered that the first secretary had for a number of years been guilty of all manner of irregularities and frauds, and the receiver rejected a large number of the claims presented by the depositors. In sustaining the action of the receiver, the court held:

1. No share-holder is entitled to credit for payments made except those made in cash at the usual place of business of the association at the hour fixed by the by-laws for the receipt of dues, and made while the Board of Directors was in session. No officer was authorized to receive payments at any other time, place or manner.

2. Payments made otherwise are nevertheless good if the money actually came to the association.

3. The burden of proof is upon the claimants to show payment made according to law, and this burden is not sustained by the mere introduction of the pass book, showing credits to the amount claimed.

4. The rules which govern the dealings between a depositor in a building association and who is familiar with the limitations imposed by the constitution upon its officers, are different from the rules which govern the dealings between third persons and officers of corporations where such third persons are not aware of any restrictions upon the apparent powers of such officer.

---

SMITH, J.; HUNT & MOORE, JJ., concur:

This action was brought to wind up the affairs of the defendant corporation which was discovered to have become insolvent, in a large measure through the fraudulent act of Jule List, one of its secretaries. Subsequently a receiver was appointed.

The case was referred to H. P. Kaufman as referee, to report upon the validity and

amount of the claims of a large number of persons who had been depositors in the association, and who made claims against the receiver which were disputed by him.

The referee made the following findings of fact and conclusions of law :

Finding No. 1. States the amounts claimed by the depositors and the amounts allowed by the referee.

Finding No. 2. The constitution and By-laws of said association provided as follows :

### Article 1.

The members shall assemble every Tuesday evening for the payment of their installments, assessments, etc. The meetings from April to October shall begin at 8 o'clock p. m., and during the other months at 7 :30 p. m., at such place as the Board of Directors may designate.

### Article IV.

Sec 1 The officers of this company shall consist of a president, vice-president, treasurer, first, second and third secretaries, and ten directors, who, in conjunction with the president, vice-president and treasurer, shall constitute a board of directors, who shall govern the business of this company.

### Article VII.

All the money which is paid to the company must be received by the Board of Directors in the presence of the first secretary, and the directors shall be responsible for the exactness of the same, and shall deliver it immediately on receipt to the treasurer.

Whatever fines or moneys he fails to col lect he shall pay himself, unless good reason can be shown, which must be accepted by the Board of Directors.

### Article VIII.

The duties of the Board of Directors are that they shall assemble every Tuesday evening in the hall of the company in order to transact the business of the company, and to collect the regular installments in the presence of the secretary.

### Article X.

Sec. 2. The finance committee shall consist of three directors whose duty it shall be to superintend the collection of all weekly dues of the company, and be held responsible for all money collected under their supervision until passed over to the treasurer, and report to the board at every regular weekly meeting previous to adjournment, the amount of the receipts of the evening.

### Article XI.

Sec. 2. All money must be collected and paid out in legal money. It is the duty of every member to hand to the Board of Directors the exact amount in their receipt book.

The company is not responsible for any money paid to an officer of the company except paid during the regular office hours, and to the authorized officers of the company.

### Article XIV.

Sec. 2. The pass books must be handed in not later than 8 :30 p. m.

### Article X.

Sec. 3. The auditing committee shall consist of five non-office holding members, who shall be nominated and voted for by the share holders two weeks previous to the annual and semi-annual meetings. It shall be the duty of the committee to audit the books and accounts of the company, and report in writing to the annual and semi-annual meetings of the share-holders.

Finding No. 3. Jule List was the first secretary and Thomas Tannion the second secretary during the whole existence of said association. Neither was at any time a member of the finance committee of said association.

Finding No. 4. The directors of said association had knowledge of the fact that some share-holders were in the habit of leaving their pass-books, containing moneys for deposit in said association, at the saloon of J. B. Wolterman (which was under the place of meeting of said association) prior to the time of such meeting ; that on some occasions during the meeting the bar-keeper carried the books to the Board of Directors ; that on other occasions the secretary received such books from the bar-keeper during the meeting time of the association, but not in the presence of the Board of Directors. The Board of Directors also had knowledge of the fact that some members sometimes paid to the secretary moneys to be deposited for them with the association, prior to the time of meeting.

Finding No. 5. The share-holders in the association generally did not have the knowledge referred to in finding fourth.

Finding No. 6. During the existence of said association, the auditing committees were appointed at the end of each six (6) months, as provided in the by-laws.

That no such committee ever reported to the association or the directors any discrepancy between the amounts credited to members on their pass-books, and the amounts credited to them on the general books of the association.

Finding No. 7. The claims presented before the master on the question of payments are of three classes :

(a.) Where no pass-book or other evidence on behalf of the claimant has been offered in evidence :

(b.) Where pass books issued by the association and showing receipts by the various officers and directors are in evidence :

(c ) Where evidence in addition to such pass-books is offered by the claimant.

### Conclusions of Law.

1. No share-holder is entitled to credit for payments made except those made at the usual place of business of the association at the hour fixed by the by-laws for receiving of dues, and made while the Board of Directors was in open session, and made in cash and to said board. No officer was authorized

to receive payments at any other time, place or manner.

2. Payment made to any officer or director in the presence of the Board of Directors, under the circumstances set out in conclusion 1, is a payment to the board.

3. Payments made otherwise than in accordance with by-laws, as construed in findings 1 and 2, are not payments to the association, unless the money actually came to the hands of the association.

4. The burden of proof is upon the claimants in this case to show that the payments they made on the amounts disallowed, were made in accordance with the previous three findings of law.

5. Such burden is not sustained by the mere introduction of the pass-books showing credits to the amount claimed.

6. In the cases included in class C. of findings of fact 7, where the claimant's evidence shows payments are not made in accordance with the by-laws, and therefore not payments to the association, the burden is on such claimant to satisfy the court how much was properly paid to the association.

7. The association or the receiver is not estopped to dispute the validity of any payments because of the facts found in findings of fact 4, 5 and 6.

We are of the opinion that the findings of fact are sustained by the evidence, and that the conclusions or rules of law applied by the referee were correct.

We are pressed in argument by counsel for the various claimants to hold that the law of agency and estoppel, which applies in cases where a corporation through its agent has dealt with third persons, should be applied in this case, and therefore to hold that although the money may have been received by an official in a manner not authorized by the association, yet the association is bound by such acts.

But there is a wide difference in the principles which should govern the dealings of third persons with the agents of a corporation, and the principles which should control in a case such as the present, where the dealings are between depositors who are stock holders in the corporation, and familiar with the limitations imposed by the constitution upon the powers of its agents. In the former case, many cases may arise where the third person may have been justified in believing the agent authorized to act as he did, and therefore a liability may attach to the corporation for the acts of the agent. But in the latter case, the depositors, knowing the limitations upon the powers of the agent, in order to be entitled to recover, must show that such agent, when acting for the corporation, was acting within the limits of the power conferred upon him. In a case decided in this court in 1892, (Mueller v. Cohen, 27 W. L. B., 353.) the obligation upon the part of the depositor who knows of the limitation upon the power of the officers, to take notice of the same, and to deal, at his peril, in any other manner, was declared and enforced; and the principle

of that case, we think, is decisive of the question involved here.

In regard to the night books which have been introduced in evidence, we can only say that they are so filled with fraudulent entries as to be entirely unreliable, and to be of no assistance to the plaintiffs in proof of their claim.

The report of the referee will be confirmed.

George W. Harding, Aaron Moore, Gideon Wilson and others, for Depositors.

Alfred M. Cohen and Alfred Mack, for Receiver.